IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERALDO IGLESIAS | ) | |
| | ) | Case No. 19 CV 06508 |
| Plaintiff, | ) | |
| | ) | Hon. Franklin U. Valderrama |
| | ) | |
| vs. | ) | |
| | ) | Magistrate Maria Valdez |
| | ) | |
| REYNALDO GUEVARA, ERNEST | ) | |
| HALVORSEN, STEVE GAWRYS, ANTHONY | ) | |
| RICCIO, ROBERT BIEBEL, and the CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSIVE TO THEIR
SUBPOENAS ON JOSHUA TEPFER AND THE EXONERATION PROJECT**

Defendants Anthony Riccio, Robert Biebel, Stephen Gawrys, and JoAnn Halvorsen, as Special Representative for the Estate of Ernest Halvorsen, by their attorneys, The Sotos Law Firm, P.C., pursuant to FED. R. CIV. P. 37, move to compel discovery responsive to their subpoenas on Joshua Tepfer and the Exoneration Project. In support, Defendants state as follows:

**INTRODUCTION**

Over the course of several weeks, multiple meet-and-confer sessions, and an exchange of written correspondence, Plaintiff and Defendants find themselves at an impasse on a discrete discovery issue: did Plaintiff's insertion of Josh Tepfer—an attorney who not only works for the law firm representing Plaintiff in this action, but who also successfully represented Plaintiff in vacating his conviction and now represents Plaintiff in pursuing a certificate of innocence—into this case as a witness possessing knowledge of Plaintiff's purported innocence amount to

subject-matter waiver of material otherwise protected by the attorney-client privilege that might bear on said knowledge? The answer is yes.

Plaintiff, by his own election, disclosed Mr. Tepfer as a material witness with knowledge of Plaintiff's innocence, a critical issue in this case. Defendants cannot defend against Mr. Tepfer's testimony on that issue without probing the bases of Mr. Tepfer's knowledge, bases almost certainly molded by materials that would otherwise be protected by the attorney-client privilege. To prop up the privilege in Mr. Tepfer's new role as a material fact witness with broad subject matter knowledge would impermissibly contort the privilege into both a sword of unique information for Plaintiff and a shield against Defendants' ability to probe the legitimacy, veracity, and reliability of that very information. A finding of subject matter waiver should enter, and Mr. Tepfer and the Exoneration Project should be compelled to disclose material that bears on his knowledge of Plaintiff's innocence.

## BACKGROUND

On March 2, 2022, Plaintiff supplemented his Rule 26(a) initial disclosure to add Mr. Tepfer as a witness who might have "information concerning ***Plaintiff's innocence***, the Defendants' fabrication of evidence, withholding of material and exculpatory evidence from Plaintiff, and malicious prosecution of Plaintiff, as well [as] the proceedings leading to the reversal of Plaintiff's conviction in the Circuit Court of Cook County." (Ex. A, Pl.'s Second Supp. Rule 26(a)(1) Disclosures, at 1 (emphasis added).) Mr. Tepfer "is a partner at Loevy & Loevy," the law firm representing Plaintiff in this case, who "dedicates most of his time" working with the Exoneration Project. (Biography of Joshua Tepfer, Loevy & Loevy, https://www.loevy.com/attorneys/joshua-tepfer/ (last visited April 27, 2022).) In his role as an Exoneration Project attorney, Mr. Tepfer represents Plaintiff as his post-conviction counsel. Mr.

Tepfer's success in getting Plaintiff's conviction vacated was the legal embryo not only of this civil action, but also Plaintiff's petition for a certificate of innocence in the Circuit Court of Cook County—where he is also represented by Mr. Tepfer.

In 2020, Defendants subpoenaed the Exoneration Project (the "2020 subpoena"), which responded with a records production and privilege log, the latter of which consisted only of communications and a PowerPoint slide sent from Joshua Tepfer to a Cook County assistant state's attorney. (*See, e.g.*, Ex. B, Defs.' Subpoena to the Exoneration Project; Ex. C, The Exoneration Project's Privilege Log.) Following Plaintiff's decision to disclose Mr. Tepfer as a fact witness, Defendants on March 8, 2022, subpoenaed Mr. Tepfer and issued a supplemental subpoena to the Exoneration Project (collectively, the "2022 subpoenas"). (*See, e.g.*, Ex. D, Defs.' Subpoena to Joshua Tepfer; Ex. E, Defs' Supp. Subpoena to the Exoneration Project.) Substantively, and in some cases literally, the 2022 subpoenas mirror Plaintiff's Rule 26(a)(1) supplement disclosure as it relates to Mr. Tepfer, seeking material relating directly to the items Plaintiff lists in that disclosure.

Specifically, Defendants requested (1) records relating to communications that Mr. Tepfer and the Exoneration Project had with Plaintiff, (2) communications with witnesses disclosed by Plaintiff that are related to Plaintiff's claims of innocence and Defendants' alleged misconduct, (3) any other records relating to Plaintiff's claims of innocence, (4) any other records relating to the proceedings leading up to Plaintiff's conviction being vacated and Plaintiff's petition for certificate of innocence, and (5) any other records relating to Defendants' alleged misconduct. (*See id.*) Defendants requested these records to shed light not only on the information and opinions Mr. Tepfer would likely testify to concerning Plaintiff's purported innocence and Defendants' alleged misconduct, but also the factual basis for such testimony.

3

To that end, Defendants are aware in one example that in the summer of 2021, an agent representing Plaintiff contacted Rosendo Ochoa "to get [Ochoa] to change [his] truthful testimony and was repeatedly calling [Ochoa] on [Ochoa's] cellphone. [Ochoa] was forced to block this persons [sic] phone number." (Ex. F, Rosendo Ochoa Decl. ¶ 10.) For another example, according to the privilege log provided by the Exoneration Project, Mr. Tepfer exchanged voluminous emails with several Cook County Assistant State's Attorneys regarding Plaintiff's case. (Ex. C, The Exoneration Project's Privilege Log.) Without question, these materials and the information contained within them would affect Mr. Tepfer's testimony "concerning Plaintiff's innocence, the Defendants' fabrication of evidence, withholding of material and exculpatory evidence from Plaintiff, and malicious prosecution of Plaintiff, as well [as] the proceedings leading to the reversal of Plaintiff's conviction in the Circuit Court of Cook County." (Ex. A, Pl.'s Second Supp. Rule 26(a)(1) Disclosures, at 1.) Any other material within these sorts of veins would similarly bear on such testimony.

Despite the plain relevance of these materials, on March 22, 2022, Mr. Tepfer responded to both of the 2022 subpoenas with a single email that reads, in full:

> The Exoneration Project (EP) already responded to a previous subpoena in this matter. These subpoenas, whether directed to me personally or to the EP as an organization, are duplicative to that prior subpoena. My response to these two subpoenas (whether it be the one to me personally and on behalf of the EP) is that I incorporate all of the objections to the prior EP subpoena. I have no additional documents to produce other than those that were previously produced in response to the subpoena, were identified in the privilege log previously, or are already produced from other sources in discovery in this civil matter.

(Ex. G, March 22 email from Joshua Tepfer.)

The following day, on March 23, 2022, Plaintiff was deposed. When confronted with his supplemental Rule 26(a)(1) disclosure and asked whether he intended to waive his attorney-client privilege with Mr. Tepfer, Plaintiff did not answer. (Ex. H, Geraldo Iglesias Dep. at 323:9–

4

17). Defendants made clear that they "want[ed] to ask Mr. Iglesias questions about his conversations with Mr. Tepfer…to the extent the privilege has been waived." (*Id.* at 325:7–10.) Then and there, counsel for both parties agreed to reserve the issue for determination via consultation consistent with Local Rule 37.2, with thirty minutes of deposition time reserved for further examination should the privilege eventually be found waived. (*Id.* at 327:20–329:17.)

On April 3, 2022, counsel met and conferred on the privilege issue, but were unable to arrive at consensus or resolution. On April 7 and 8, 2022, an exchange of emails memorialized each counsel's positions. Defendants maintained that Plaintiff's disclosure of Mr. Tepfer amounted to subject matter waiver of attorney-client privilege, as "[t]o allow otherwise would use the privilege as a sword and a shield because Mr. Tepfer would testify about evidence supportive of Plaintiff that was, at least in part, learned from communications with Plaintiff, but then shield negative evidence learned from communications with Plaintiff that he chose not to include in public filings." (Ex. I, April 8 email from David Brueggen.) Defendants also "expressed concern that [Plaintiff's counsel] w[as] attempting to use Mr. Tepfer as a spokesperson/expert in Plaintiff's case which further justifies [Defendants'] need to inquire about all the bases of his knowledge, including communications with Plaintiff." (*Id.*) Plaintiff argued that there was no waiver over any subject matter because Plaintiff does "not intend Mr. Tepfer to testify about any privileged communications, so this should not be an issue." (Ex. J, April 7 email from Rachel Brady.)

During the meet-and-confer, Plaintiff offered to alter the "concerning Plaintiff's innocence" language of his disclosure to read, "concerning evidence of innocence presented during post-conviction proceedings." (*Id.*) Defendants rejected this proposal, asserting that "evidence of innocence" would still "have to include evidence from the Plaintiff." (Ex. I, April 8

5

email from David Brueggen.) The parties have agreed that Plaintiff will need to put up Mr. Tepfer for deposition, but given that loggerheads remain on this issue, the deposition of Mr. Tepfer needed to be postponed until after resolution of this motion to compel.

## COMPLIANCE WITH RULE 37.2

The parties have engaged in Local Rule 37.2 conferences as detailed above in compliance with this Court's standing order and FED. R. CIV. P. 37(a). Despite the parties' efforts, they were unable to resolve the disputes set forth in this motion.

## ARGUMENT

If the issue seems simple, that's because it is—the Northern District of Illinois already resolved it in *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 162 F.R.D. 539 (N.D. Ill. 1995). In *Fujisawa*, a defendant sought communications between the plaintiff corporation and its former counsel regarding what the plaintiff described as "advice with respect to [forms] questioned by the [Food and Drug Administration]." *Id.* at 540. "The parties agree[d] that, by placing a matter in issue, [the plaintiff corporation] waived the attorney-client privilege," as "[v]oluntary disclosure of privileged information about a matter waives the privilege as to all information on the same subject matter." *Id.* at 541. The parties disagreed, however, on "the scope of the subject matter covered by [plaintiff's] waiver of privilege."

Per the court, it was plaintiff's "burden of proof" to show that the former counsel "was not influenced" by any of the communications at issue. *Id.* at 542. Such influence "depend[ed]—since the privilege must be strictly construed—on [the former counsel's] knowledge during the time he was giving advice" to the plaintiff about the germane issue. *Id.* at 541–42. In other words, if the communications bore on the former counsel's knowledge of the subject matter in issue—regardless of whether the communications themselves were actually in issue—any

6

privileges shielding them were obviously waived. Since the plaintiff "ha[d] not met its burden of proof of showing that [former counsel] was not influenced" by the materials sought for production, the subject matter waiver was broadly construed. *Id.* at 542. And naturally, "to the extent [the plaintiff] waived the attorney-client privilege, they…similarly waived any work-product privilege." *Id*. The plaintiff was thus ordered to disclose the requested documents. *Id.*

Plaintiff here is well aware of *Fujisawa*, as Defendants raised the decision during the meet-and-confer process. But Plaintiff has suggested that *Fujisawa* "stands only for the proposition that a party who places an attorney's *communications* at issue by disclosing him to testify about *communications* waives privileges over all communications about that same issue." (Ex. J, April 7 email from Rachel Brady.) This is wrong—exceedingly so. *Fujisawa* stands for the specific proposition that the court said it stands for: "Voluntary disclosure of privileged information about a matter"—the matter being knowledge of counsel, in both *Fujisawa* and this case—results in "waive[r of] the privilege as to all information on the same subject matter." 162 F.R.D. at 541. Where such disclosure takes place and the parties disagree on the scope of "all information on the same subject matter," the plaintiff has the "burden of proof of showing that [counsel] was not influenced" by the information the plaintiff seeks to withhold. *Id.* at 541–42.

That is what *Fujisawa* stands for, the all-too-obvious rule that where a plaintiff puts knowledge of counsel in issue, that plaintiff waives the privilege protecting material related to counsel's knowledge unless the plaintiff can prove that that material did not influence said knowledge. Plaintiff's manufactured contention, that *Fujisawa* is somehow limited to a far more discrete proposition not once articulated in the opinion itself, is simply incorrect.

Indeed, *Fujisawa* is not some outlier case. Recently, much the same holding entered in the Eastern District of Virginia, where in 2020 the district court analyzed an issue manifestly

7

similar to that present in *Fujisawa* and this motion. *See, e.g.*, *Scalia v. Med. Staffing of Am., LLC*, Nos. 2:18cv226, 2:19cv475, 2020 WL 1811344 (E.D. Va. Apr. 8, 2020). In *Scalia*, the defendants to a Fair Labor Standards Act claim asserted an advice-of-counsel affirmative defense. *Id.* at *1. "In support of that affirmative defense, Defendants proffered that they relied on, *inter alia*, the legal advice of [their] attorney…." Aside from two redacted emails and a short legal memorandum, the *Scalia* defendants invoked attorney-client privilege to withhold any further of their attorney's documents. Also on the basis of the privilege, their attorney was exceedingly tight-lipped at her deposition. *Id*. Specifically, in response to the plaintiff's discovery efforts "to explore [the d]efendants' good faith affirmative defense based on their claim of reliance on advice of counsel…[the d]efendants asserted…that attorney-client privilege justifies their position limiting inquiry into the information and advice received from the attorney as to the subject matter" their affirmative defense placed in issue. *Id.* at *2.

Echoing the Northern District in *Fujisawa*, the *Scalia* court noted that "[a]ny voluntary disclosure by the client to a third party waives the privilege not only as to the specific…information revealed, but also waives the privilege as to the subject matter of the disclosure and all other communications relating to the same subject matter." *Id.* at *3. The court also noted that the privilege is implicitly waived where it is "inject[ed ] into the case." The court discussed such injection in the context of the advice-of-counsel defense, but its reasoning for finding implied waiver was universal: a "'party should not be permitted to define selectively the subject matter…in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery,'" thus "'undermin[ing] the very purpose behind the exception to the attorney-client privilege at issue here—fairness.'" *Id.* at *4 (quoting *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995)). That axiom finds even greater stakes here, where

the privilege finds itself being coopted by the damages-seeking party, and not the party simply trying to defend itself. Indeed, Defendants expressed this specific worry to Plaintiff in the meet-and-confer, noting the improper utilization of selective discovery as an unfair sword-and-shield tactic. (*See* Ex. I, April 8 email from David Brueggen.)

In *Scalia*, the court found both implied and express waiver, the former because the defendants placed the privilege in issue by asserting the advice-of-counsel defense, the latter because the defendants "produced documents in discovery from [the] attorney…and proffered her for deposition." *Id.* at *5. Thus, "the attorney-client privilege was waived as to all other communications relating to the same subject matter." *Id*. The waiver was as broad as possible, too, as the court found that the defendants' "privilege claim is waived *in toto* regarding this subject matter." *Id*. The defendants were consequently "ordered to disclose all communications between them and any of their attorneys regarding the subject matter at issue," including not only "all communications from attorney…on this subject," but also "all communications and information provided to the attorneys by [the d]efendants upon which the attorneys based their advice." *Id.* at *6.

The *Scalia* remedy is the appropriate one here. As the defendants did there, Plaintiff here chose to inject the privilege into this case when he disclosed his attorney as a fact witness with knowledge of his alleged innocence, resulting in implied waiver of the privilege. Also mimicking the *Scalia* events, express waiver occurred first via the disclosure of thousands of relevant documents from the Exoneration Project that predated the 2022 subpoenas—documents that Mr. Tepfer admitted were responsive to the 2022 subpoenas when he stated that he had "no *additional* documents to produce *other than those that were previously produced* in response to the subpoena." (Ex. G, March 22 email from Joshua Tepfer (emphasis added).) Express waiver

9

again occurred when, much like the attorney in *Scalia* being proffered for deposition, counsel for Plaintiff agreed in the meet-and-confer process that by virtue of Mr. Tepfer's inclusion in the Rule 26 disclosure, he will have to sit for deposition. A ruling of *in toto* waiver as to all underlying material should thus enter, as to find otherwise would reject the blunt concerns of selective disclosure espoused in *Scalia* and permit contortion of the privilege into a nefarious instrument of sword-and-shield tactics.

Finally, a comment is warranted on the worrisome nature of those tactical implications—and the cynicism at work in Plaintiff's posturing. Grounding the *Fujisawa* and *Scalia* decisions is the pesky reality that the attorney-client and work-product privileges are not the all-encompassing fortresses that attorneys so often wish they were.[1] Rather, "courts have always construed the privilege narrowly," as they must to serve the interests of justice. *Pearlshire Capital Grp., LLC v. Zaid*, 490 F. Supp. 3d 1299, 1307 (N.D. Ill. 2020). "[I]t cannot be stressed enough that there is no presumption in favor of finding a document to be immune from discovery under either the attorney-client privilege or the work product doctrine." *Id*. "Both evidentiary privileges operate in derogation of the search for the truth and run counter to the public's right to every person's evidence." *Id*. Thus, courts will not apply them "unless to do so will serve a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id*.

What Plaintiff attempts to do here threatens this tenet in the absolute sense—which unfortunately is none too surprising, as "experience teaches that abuse of the privilege is all too common." *Id.* (collecting cases). Here, that abuse comes in the form of a weaponization the

---

[1] Because Plaintiff's "Complaint is based on 42 U.S.C. § 1983, with jurisdiction pursuant to 28 U.S.C. § 1331," "[q]uestions of privilege…arise in the adjudication of federal rights," and thus the "federal common law of privileges" governs. *Patrick v. City of Chi.*, 154 F. Supp. 3d 705, 710 (N.D. Ill. 2015).

Northern District has already rejected. "A party should not be allowed to exploit selective disclosures for tactical advantage," the district has long taught its litigants. *In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wisc. Steel*, 666 F. Supp. 1148, 1153 (N.D. Ill. 1987). By press-ganging the privileges into serving as fisticuffs—punches to be thrown and pulled as suits the attacker's needs—Plaintiff ignores this teaching, conjuring instead a weapon that not only threatens Defendants in this litigation, but one that would gash the very truth-seeking function of litigation writ large. As *Fujisawa* and *Scalia* demonstrate, such tack simply cannot be permitted in the American system of law.

Plaintiff's alleged innocence lies at the heart of this case, and Plaintiff would use Mr. Tepfer to bolster his version of events on that lynchpin issue. To defend themselves against Mr. Tepfer's knowledge, Defendants are entitled to the materials underlying that knowledge lest they be forced to step into the ring deprived of their fighting chance. The courts' endeavor for truth demands that Mr. Tepfer and the Exoneration Project be ordered to disclose (1) records relating to communications that Mr. Tepfer and the Exoneration Project had with Plaintiff, (2) communications with witnesses disclosed by Plaintiff that are related to Plaintiff's claims of innocence and Defendants' alleged misconduct, (3) any other records relating to Plaintiff's claims of innocence, (4) any other records relating to the proceedings leading up to Plaintiff's conviction being vacated and Plaintiff's petition for certificate of innocence, (5) any other records relating to Defendants' alleged misconduct, and (6) specifically all communications exchanged between Mr. Tepfer and the Cook County State's Attorney's Office—a third-party that was adverse to Plaintiff's certificate of innocence—that the Exoneration Project marked as privileged.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendants request that the Court grant their motion to compel.

Date: April 27, 2022

Respectfully Submitted,

/s/ Kyle T. Christie
JOSH M. ENGQUIST, Attorney No. 6335693
Special Assistant Corporation Counsel
*Counsel for Defendants Halvorsen,
Gawrys, Riccio, and Biebel*

James G. Sotos
Josh M. Engquist
Jeffrey Kivetz
David A. Brueggen
Carson W. Canonie
Kyle T. Christie
The Sotos Law Firm, P.C.
141 W. Jackson Blvd, Suite 1240A
Chicago, IL 60604
Tel: (630)735-3300
kchristie@jsotoslaw.com

## CERTIFICATE OF SERVICE

I certify that on April 27, 2022, I electronically filed the foregoing **Defendants' Motion to Compel Discovery Responsive to Their Subpoenas on Joshua Tepfer and the Exoneration Project** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list:

*Attorneys for Plaintiff:*
Jonathan I. Loevy
Anand Swaminathan
Arthur R. Loevy
Joshua A. Tepfer
Rachel E. Brady
Sean Starr
Steve E. Art
Isabella Aguilar
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60606
(312)243-5900
jon@loevy.com
anand@loevy.com
arthur@loevy.com
josh@loevy.com
brady@loevy.com
sean@loevy.com
steve@loevy.com
aguilar@loevy.com

**Attorneys for Reynaldo Guevara**
Thomas M. Leinenweber
Michael J. Schalka
Kevin Zibolski
Megan K. McGrath
Leinenweber Baroni & Daffada, LLC
120 N. LaSalle St., Suite 2000
Chicago, IL 60602
(312) 663-3003
thomas@ilesq.com
mjs@ilesq.com
kevin@ilesq.com
mkm@ilesq.com

**Attorneys for City of Chicago**
Eileen E. Rosen
Austin G. Rahe
Catherine M. Barber
Theresa B. Carney
Rock Fusco & Connelly, LLC
321 N. Clark, Suite 2200
Chicago, IL 60654
Tel: (312) 494-1000
erosen@rfclaw.com
arahe@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com

/s/ Kyle T. Christie
KYLE T. CHRISTIE, Attorney No. 6335693
Special Assistant Corporation Counsel
*One of the Attorneys for Individual Defendants*