IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERALDO IGLESIAS, | |
| Plaintiff, | No. 19-cv-06508 |
| v. | Judge Franklin U. Valderrama |
| REYNALDO GUEVARA, *et al.*, | |
| Defendants. | |

**ORDER**

Plaintiff Geraldo Iglesias (Iglesias) was convicted of murder and incarcerated for 17 years before his conviction was vacated and the charges dropped by the Cook County State's Attorney's Office. Iglesias sued the City of Chicago (the City) and several Chicago Police Department (CPD) officers involved in his arrest and conviction (Defendant Officers)[1] under 42 U.S.C § 1983 and state law. R. 67, Am. Compl.[2] Before the Court is Iglesias's partial motion for summary judgment against the City. R. 248, Mot. Summ. J. For the reasons that follow, Iglesias's motion is denied.

**Background**

The Court assumes familiarity with the facts of this case as previously set forth in the Court's November 13, 2025 Memorandum Opinion and Order, as well as

---

[1]Defendant Officer Ernest Halvorsen is deceased. His wife, JoAnn Halvorsen, has been substituted as a Defendant and Special Representative for Ernest Halvorsen. R. 56.

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

familiarity with the rulings (both procedural and substantive) therein. *See* R. 337, 11/13/2025 Opinion. Accordingly, the Court only sets forth those facts necessary to resolve Iglesias's motion, which it does so favorably to the City, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in the City's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (cleaned up);[3] *see also Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (cleaned up) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details all material undisputed facts and notes where facts are disputed, to the extent disputed facts are supported by evidence.

In 1993–94, Iglesias was arrested, prosecuted, and convicted of the murder of Monica Roman. Am. Compl. ¶¶ 1, 117. Iglesias then spent 17 years behind bars before his conviction was vacated and all charges against him were dropped in January 2019. *Id.* ¶ 141.

Iglesias sued Defendant Officers under 42 U.S.C § 1983 and related state law alleging that he was wrongfully convicted and incarcerated. Am. Compl. Pertinent here, Iglesias also brings a municipal liability claim against the City under *Monell v.*

---

[3]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*Dep't of Soc. Servs.,* 436 U.S. 658 (1978) (*Monell*) (Count V), alleging that his injuries "were caused by the policies, practices, and customs of the City of Chicago, as well as by the actions of policy-making officials for the City of Chicago." Am. Compl. ¶ 174. Specifically, Iglesias asserts he was injured by the City's policies and practices related to the fabrication of evidence; unduly suggestive identification procedures; evidence suppression; and the supervision and discipline of police officers. *See* Am. Compl. ¶¶ 173–184.

Iglesias seeks partial summary judgment on his *Monell* claim, arguing that (1) the City is precluded from relitigating Iglesias's theory that there existed an official policy of suppressing exculpatory evidence and (2) there is no genuine dispute that City policymakers promulgated facially deficient written policies that permitted the suppression of exculpatory evidence. *See* R. 248, Memo. Summ. J. The fully briefed motion is before the Court.

**Legal Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

### I. Issue Preclusion

Iglesias alleges the City is liable under *Monell* for the alleged misconduct of Defendant Officers during the investigation and prosecution related to the murder of Monica Roman.

In *Monell*, the Supreme Court held that a municipality may be liable under § 1983 for its own violation of the federal constitution and laws. 453 U.S. 658 (1978). To establish *Monell* liability, a plaintiff must demonstrate that he (1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, which (3) proximately caused his injury. *Scott v. Dart*, 99 F.4th 1076, 1088–89 (7th Cir. 2024). As noted above, municipal action giving rise to § 1983 liability may take the form of an express policy, a widespread practice, or custom or action by one

4

with final policymaking authority. *Stockton v. Milwaukee Cnty.*, 44 F. 4th 605, 617 (7th Cir. 2022).

Here, among other theories, Iglesias alleges that Defendant Officers' actions were taken pursuant to the City's policies and practices related to the suppression of exculpatory evidence. Am. Compl. ¶¶ 175, 177–180. Citing prior jury verdicts in *Fields v. Chicago*, 2017 WL 4553411 (N.D. Ill. Oct. 12, 2017) (denying the City's post-trial motions), *affirmed*, 981 F.3d 534 (7th Cir. 2020), and *Rivera v. Guevara*, 2019 WL 13249674 (N.D. Ill. Sept. 20, 2019) (denying the City's post-trial motions), Iglesias argues that issue preclusion now bars the City from contesting that it had a policy and practice of suppressing such evidence.

Issue preclusion, also known as collateral estoppel, applies based on a prior federal judgment when "(1) the issue sought to be precluded was the same as that involved in the prior litigation, (2) the issue was actually litigated, (3) the determination of the issue was essential to the final judgment, and (4) the party against whom estoppel is invoked was fully represented in the prior action." *Oneida Nation v. Vill. of Hobart*, 968 F.3d 664, 686 (7th Cir. 2020) (cleaned up). "Collateral estoppel applies to factual inferences that necessarily flow from a general verdict." *Taylor v. City of Chicago*, 2021 WL 4401528, at *4 (N.D. Ill. Sept. 27, 2021) (cleaned up). "For the inference to have been necessary, a rational jury *must* have made such findings en route to its general verdict." *Id.*

The City advances several arguments against issue preclusion, but the Court need only focus on one: the "issue in the present case is not the same as the issues in

5

*Fields* and *Rivera*." R. 284, Resp., at 17. Specifically, the City argues that "*Fields* and *Rivera* rested their theory on the narrow issue of street files[4] where [Iglesias] here seeks a broad statement of *Brady* liability, specifically that the City had an official policy of suppressing exculpatory and impeachment evidence." *Id.* at 18. In other words, the City argues that the only factual inference flowing from the juries' verdicts in *Fields* and *Rivera* is that the City had a policy and practice of withholding evidence in the specific form of street files. And because "there is no evidence that such a street file existed" in Iglesias's case, the City reasons, the issues in *Fields* and *Rivera* are irrelevant to those present here. *Id.* at 19.

Predictably, Iglesias disagrees, stating that the issue decided in *Fields* and *Rivera* was simply "whether the City had an official policy of suppressing evidence." R. 296, Reply at 12–13. This assertion, contends Iglesias, is supported by the evidence presented in *Fields* and *Rivera*. From Iglesias's perspective, the issues in *Fields* and *Rivera* are not distinguishable, as those cases did not just concern street files but involved "the suppression of exculpatory and impeachment evidence in many different forms, including the suppression of things the police knew but did not report, and the suppression of things the police wrote down, placed in paper files, and did not disclose." *Id.* at 13. Thus, according to Iglesias, the issue in *Fields* and *Rivera* is identical to that here. The Court disagrees.

---

[4]"Street file" is a term "used to refer to files that contained detective notes and memoranda without a Records Division number," that "were kept separate from the official investigative file." Resp. at 19.

Starting with *Fields*, Iglesias's assertion that this case involved the suppression of evidence beyond street files is belied by *Kluppelberg v. Burge*, 276 F. Supp. 3d 773 (N.D. Ill. 2017). True, the court in *Kluppelberg* found that the *Monell* verdict in *Fields* precluded the City from relitigating that same *Monell* theory again. However, the court found that "all the *Monell* evidence and argument" presented in *Fields* was "related to CPD's use of street files." *Kluppelberg*, 276 F. Supp. 3d at 777. "In fact," the court stated, "Fields never suggested that the ten other types of evidence that supported his due process claims were also evidence for his *Monell* claim." *Id.* at 777–78. "As such, while Fields may have proven additional constitutional violations by the individual defendants with other exculpatory evidence, for his *Monell* claim he must have proven that the City had a policy or practice concerning street files, because that is the only evidence he presented for it." *Id.* at 778. The same goes for *Rivera*, as the court there found that Rivera's *Monell* suppression claim "depend[ed] on the existence of underlying widespread practices of maintaining street files . . . ." *Rivera*, 319 F. Supp. 3d at 1057–58. It is thus clear that the *Monell* verdicts in *Fields* and *Rivera* do not encompass nearly as wide a range of evidence as Iglesias suggests, and found only that the City had a policy and practice of withholding street files. To accept Iglesias's proposition and use these verdicts to find that the City had a policy and practice of suppressing *all forms* of exculpatory evidence is a bridge too far.

Iglesias's argument that the jury instructions in *Fields* and *Rivera* allow for such broad preclusion does not persuade the Court otherwise. The Court does not dispute that the jury instructions in those cases called for the jury to decide whether

7

the City had a policy or practice of suppressing exculpatory evidence. Nor can the Court deny that the juries held the City liable for such a policy or practice. But the Court must read a jury verdict "[u]nder the evidence and the instructions, and as the case was argued" to ascertain the particular issues that may be precluded. *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978); *Taylor*, 2021 WL 4401528, at *4 ("the Court can use context to establish what the jury must have found in reaching its verdict"); *Kluppelberg*, 276 F. Supp. 3d at 778. And, as already stated, based on the *Monell* evidence presented in *Fields* and *Rivera*, the Court reads those verdicts in a far narrower fashion than Iglesias.

All in all, the issues in *Fields* and *Rivera* are dissimilar to those present here, and as such, the Court finds that issue preclusion does not apply.

## II. The Sufficiency of the City's Evidence Suppression Policies

Iglesias also seeks summary judgment on the theory that, after being notified of CPD's suppression problems, City policymakers "put in place written policies that were facially deficient to stop the suppression of exculpatory evidence in homicide investigations." Memo. Summ. J. at 19. In support, Iglesias asserts that he has demonstrated the City's deficient policy response in four ways: (1) the facial deficiencies of the written policies; (2) the failure of the policies to address specific problems identified by a federal judge in *Palmer v. City of Chicago*, No. 82 C 2349 (N.D. Ill.); (3) CPD's "lack of effort" to implement the policies; and (4) the concession of City policymakers that "the policies put forth were insufficient to overcome a problem as entrenched as [CPD]'s evidence suppression policy." *Id.* at 24. Iglesias

8

maintains that the City has failed to adduce any evidence that creates a genuine dispute as to the sufficiency of its policies.

Naturally, the City categorically rejects Iglesias's contentions and argues that the sufficiency of its policies is hotly disputed. The Court agrees. Although the Court could launch into a detailed analysis of the material disputes of fact between Iglesias and the City, it boils down to this: Iglesias looks at the City's written policies and insists they are deficient, whereas the City looks at its written policies and insists the opposite. Replete with disputes of fact, the voluminous summary judgment briefing in this case has made this abundantly clear. *See, e.g.*, R. 281, City Resp. to PSOF, ¶¶ 14–39; R. 275, Pl. Resp. to City SOF ¶¶ 8–18; R. 253, City Memo. Summ. J. When viewing the record in the light most favorable to the City, the Court cannot find—as a matter of law—that City policymakers promulgated facially deficient written policies that failed to stem the tide of evidence suppression within CPD.[5] That is a quintessential question for the jury.

## Conclusion

For the reasons set forth above, the Court denies Iglesias's partial motion for summary judgment. R. 248.

Date: December 8, 2025

United States District Judge
Franklin U. Valderrama

---

[5] Notably, despite the ubiquity of suppression-related *Monell* claims throughout this District, Iglesias does not point to any cases in which a court has found, as a matter of law, that the City promulgated facially deficient policies in a failed attempt to end evidence suppression.